**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| INTELIQUENT, INC., | |
| Plaintiff, | CASE NO. 1:16-CV-06976 |
| vs. | |
| FREE CONFERENCING CORPORATION, individually and d/b/a HD TANDEM; HDPSTN, LLC d/b/a HD TANDEM; WIDE VOICE, LLC; and JOHN DOES 1-10, | THE HONORABLE JOHN ROBERT BLAKEY |
| Defendants. | |

## WIDE VOICE, LLC'S MOTION TO DISMISS INTELIQUENT, INC.'S SECOND AMENDED COMPLAINT

## I.    **INTRODUCTION.**

Despite a third effort at making fraud and RICO claims that comply with the stringent pleading requirements of Rule 9(b), Plaintiff Inteliquent, Inc. ("Inteliquent") still has no particularized allegations against Defendant Wide Voice, LLC ("Wide Voice"), the movant here, or against the other Defendants, HDPSTN, LLC d/b/a HD Tandem ("HD Tandem") and Free Conferencing Corporation ("Free Conferencing").[1]

Inteliquent's Second Amended Complaint ("SAC") adds no new facts against Wide Voice that satisfy Rule 9(b)'s heightened pleading standard for RICO and fraud claims.  Also, as with its earlier pleadings, Inteliquent's SAC is based on the proposition that its relationship with the defendants is governed by telecommunications laws and regulations associated with tariffs. However, the parties' relationship is controlled by the commercial agreements that are attached to the SAC and thus most of the SAC is based on implausible assumptions inconsistent with the contracts at issue.  Given the nature of the parties' agreements, Inteliquent has not alleged any plausible claim against Wide Voice.  The SAC should be dismissed as to Wide Voice.

## II.    **BACKGROUND.**

Inteliquent is a telecommunications carrier.  SAC ¶ 4.  As part of its business, Inteliquent contracts with long distance carriers ("IXCs") to deliver IXC's calls to local phone companies ("local exchange carriers" or "LECs"), who then terminate the calls to their customers.  *Id.* at 53. As recognized in the SAC, Inteliquent has various options for transmitting calls.  Inteliquent can deliver these calls directly under a LEC's tariffs filed with the Federal Communications Commission, paying the LEC's tariffed rate (*i.e.*, "the regulated path").  *Id.* ¶ 54.  Alternatively,

---

[1] As is clear in the argument below, the deficiencies in the SAC also apply to the claims against the other defendants.  HD Tandem and Free Conferencing have filed an answer and counterclaim, but will be filing a motion for judgment on the pleadings under Rule 12(c) as soon as the pleadings are closed.  *See* Fed. R. Civ. P. 12(c) (permitting motion for judgment on pleadings "[a]fter the pleadings are closed . . .").

Inteliquent can enter into negotiated commercial agreements with other regulated "carriers" or with non-carrier transporters who take calls from Inteliquent and arrange for their termination via commercial contracts ("Commercial Agreement Services"). *Id.* ¶ 59.

Wide Voice is a LEC that provides services either under the terms of its published tariffs or through negotiated commercial agreements. *Id.* ¶ 42. HD Tandem is not a LEC or a carrier under the Communications Act. *Id.* ¶ 41. Instead, HD Tandem is a non-carrier transporter that offers transport services under privately negotiated commercial agreements. *Id.* ¶ 9. This action concerns Inteliquent's contracts with HD Tandem for Commercial Agreement Services or what the contracts call "voice (or call) termination services." *See* SAC, Ex. A. Wide Voice is a party to one of these contracts, but the SAC makes no mention of any contractual obligations of Wide Voice. SAC ¶ 42.

In August 2013, Inteliquent and HD Tandem entered into a Reciprocal Master Services Agreement ("MSA"), pursuant to which HD Tandem agreed to provide "call termination services" to Inteliquent – i.e., serve as the intermediate transporter of calls to certain destinations.[2] *Id.* ¶ 269. The MSA does not define "call termination services" or specify how HD Tandem is to transport Inteliquent's calls. HD Tandem is thus free to deliver call traffic in any way that meets the needs of its business.

On October 22, 2015, Inteliquent, HD Tandem, Wide Voice, and Free Conferencing executed a Master Addendum to Agreements ("Master Addendum"), which amended the MSA, as well as certain other agreements. SAC ¶¶ 99, 270. The Master Addendum made two modifications to the rates for the delivery of the long distance traffic for which Inteliquent was the wholesaler to customers served by two South Dakota LECs (collectively, the "Applicable

---

[2] The Reciprocal Master Services Agreement is attached as Exhibit N to the SAC.

LECs"). *See* Master Addendum, ¶¶ 1-3.

The first change was to the price Inteliquent was paying to complete calls on the "regulated path," *i.e.*, via tariffs. The Applicable LECs agreed to designate Inteliquent as their official "Homing Tandem." Master Addendum, ¶¶ C, 1; SAC ¶ 92. That arrangement enabled Inteliquent to charge IXCs tandem switching charges, a portion of which is then shared with the Applicable LECs *if the calls were transmitted down the regulated path governed by the LEC's tariffs*. Master Addendum, ¶¶ C, 1.

The second change, relevant to this case, was the price Inteliquent paid to transmit calls for completion using Commercial Agreement Services (wholly independent from the regulated path). For these Commercial Agreement Services, HD Tandem agreed to provide Inteliquent with "voice termination services" under terms negotiated by the parties. *Id.* ¶¶ 2-3. In particular, HD Tandem agreed to transmit Inteliquent's *own* traffic to the Applicable LECs under a "most favored nation" rate, referred to in the Master Addendum as "*the lowest rates made available to any carrier other than AT&T, Verizon & Google or a third party as part of a legal settlement*." *Id.* ¶ 2. This is the *only* obligation HD Tandem has as to pricing under the terms of the contract Inteliquent negotiated.

Under the Master Addendum, Inteliquent had an obligation to route its traffic using Commercial Agreement Services to the Applicable LECs via HD Tandem:

> [S]o long as HD Tandem's rates provided to Inteliquent (i) are the lowest rates made available to any carrier (excluding AT&T, Verizon, Google and any third party as part of a legal settlement) and such rates are not greater than the combination of the [A]pplicable LEC's tariffed end office rates and the applicable usage based port recovery credit set out in Section 1 [of the Master Addendum (*i.e.*, the rates charged for the regulated path)] and (ii) are lower than any rate offered to Inteliquent by a third party.

*Id.* ¶ 3 (hereinafter, the "Rate Ceiling"). Inteliquent thus must route traffic via HD Tandem *only if* HD Tandem charges below the Rate Ceiling. *Id.* If HD Tandem does not, Inteliquent is

released of its obligations and may transmit the calls to any transporter and via any path it chooses (regulated path or commercial agreements). *Id.*

The Master Addendum, like the MSA, does not contain any provision as to how HD Tandem is to deliver its services. It simply provides that the "Voice Termination Services" will "carry traffic terminating to the [Applicable] LECs . . . at the rates set out." *Id.* ¶ 2.

## III.   INTELIQUENT'S SECOND AMENDED COMPLAINT.

In its SAC, Inteliquent alleges that the Master Addendum, a contract freely negotiated between the parties, is a "fraudulent scheme" designed "to cheat Inteliquent of millions of dollars in the form of false and unlawful charges." SAC ¶ 1. Defendants designed this scheme, Inteliquent alleges, to charge Inteliquent high rates when arranging for the termination of calls to Free Conferencing, a customer of the Applicable LECs. *Id.* ¶¶ 1, 10.

Inteliquent's "fraudulent scheme" claim is made implausible by its own allegations and the very contracts on which the SAC relies. Inteliquent alleges that "defendants through the Master Addendum have been charging Inteliquent high amounts based on contractual rates that incorporate and depend upon the [A]pplicable LECs' tariffed access charges for" terminating calls to Free Conferencing. *Id.* ¶ 11. Inteliquent also alleges that it was induced into paying the "contract rate" by misrepresentations that calls to Free Conferencing were being delivered to locations in South Dakota and terminated through tandem transport services that supported the imposition of high charges. *Id.* ¶¶ 11, 98, 141. Inteliquent makes these assertions repeatedly in its SAC, but both assertions are wholly inconsistent with the contracts Inteliquent attaches to the SAC that are the sole basis for the parties' relationship.

Under the Master Addendum, HD Tandem is required only to charge Inteliquent "the lowest rates made available to any carrier other than AT&T, Verizon & Google or a third party as part of a legal settlement." Master Addendum, ¶ 2. This rate provision does not incorporate

or depend upon what the Applicable LECs could charge under their tariffs.  The Master Addendum also contains no restriction on how HD Tandem is to transport Inteliquent's calls.

Also, Inteliquent's claim of a "fraudulent scheme" is not supported by any allegations of fraud that comply with Rule 9(b).  As discussed in detail below, the few misrepresentations alleged in Inteliquent's 85-page SAC do not identify any false statement by Wide Voice or set forth the "who, what, when, where, and how" of the fraud.

In an attempt to avoid scrutiny of its inability to comply with Rule 9(b), Inteliquent has cited the United States District Court for the District of South Dakota's recent decision in *Sprint Commc'ns Co., LP v. Native Am. Telecom et al.*, 4:10-cv-04110 (D.S.D. Aug. 4, 2016) (the "Sprint/NAT Decision").[3]  In the Sprint/NAT Decision, the Court addressed only the LEC's right to bill an IXC under its tariffs and found that for the calls at issue Free Conferencing was not an "end user" under the tariffs at issue.   Whether a LEC was entitled to bill under a tariff for traffic transmitted through the regulated path is irrelevant to the relationships of the parties in this case that are controlled by negotiated commercial contracts.  As made clear in the SAC itself, instead of delivering calls over the regulated path (*i.e.*, pursuant to a LEC's tariff), Inteliquent can "sign a commercial contract with an intermediary company that agrees to take traffic from Inteliquent and make arrangements" for its termination.  SAC ¶ 59.

Still, Inteliquent seeks to use an adverse, though irrelevant ruling against Native American Telecom (who is not a party to this case), to its advantage, alleging that the Sprint/NAT Decision "means that the Master Addendum's rates that are linked to the tariff rates are improper and *no* charges could be imposed."  *Id.* ¶ 16(c) (emphasis in original).  But rates paid under the Master Addendum, by its express terms, do not "link" to any tariff; the Master

---

[3] The decision is attached as Exhibit B to the SAC.

Addendum simply contains a provision that allows Inteliquent to send traffic elsewhere if HD Tandem's rate exceeds a specified formula, one component of which includes one of the applicable LEC's tariff charges. *See* Master Addendum, ¶¶ 2, 3. Consequently, the Sprint/NAT Decision does not provide any plausible support for any of Inteliquent's claims. Moreover, Inteliquent filed its original and first amended complaint in this action long before the Sprint/NAT Decision was issued and thus, the addition of the Sprint/NAT Decision to this case adds nothing substantive, only a distraction from the unambiguous contracts the govern the parties' business relationship.

## IV.     ARGUMENT.

### A.     Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, quoting *Twombly*, 550 U.S. at 557.

When deciding a motion to dismiss, the Court may consider documents attached to the complaint or documents referred to in the complaint which are central to plaintiff's claims. *Rutledge v. Chicago*, No. 13 C 0870, 2013 WL 6645510, *1 (N.D. Ill. 2013).

**B.**     <u>**Inteliquent Has Not Stated A Plausible Claim Against Wide Voice For Breach Of Contract (Count IV).**</u>

In Count IV, Inteliquent alleges that Wide Voice and the other defendants breached the Master Addendum by overcharging Inteliquent. SAC ¶¶ 211, 216. Inteliquent further alleges that Wide Voice and the other defendants "have not complied with their covenant to act in good faith in performing the rate terms of the Master Addendum." *Id.* ¶ 212.

Count IV must be dismissed as to Wide Voice because there is no allegation that Wide Voice charged Inteliquent anything under the Master Addendum. In fact, under the terms of the Master Addendum, the only payment obligation imposed on Inteliquent is to pay HD Tandem. *See* Master Addendum, ¶ 3. This is acknowledged in Inteliquent's SAC when it states: "Inteliquent delivers the traffic to HD Tandem, and then HD Tandem sends Inteliquent invoices that reflect the rates as described in § 3 of the Master Addendum."[4] SAC ¶ 101. Accordingly, Count IV as pled against Wide Voice fails to state a claim for relief and must be dismissed.

Furthermore, nowhere in Count IV (or the SAC) does Inteliquent identify the specific rate provision within the Master Addendum it claims Wide Voice or any other defendant breached. Instead, Inteliquent's contract claim merely provides that it:

- "can only be charged a rate [by HD Tandem] . . . that is not greater than the combination of the [A]pplicable LEC's ***tariffed end office rates*** and the applicable usage based [PRC]." *Id.* ¶ 210 (quoting Master Addendum, ¶ 3) (emphasis in original); and

- "Inteliquent has been charged and continues to be charged at a rate higher than the Master Addendum permits." *Id.* ¶ 211.

Inteliquent's basis for its breach of contract claim is wholly inconsistent with the terms of the

---

[4] In its SAC, Inteliquent does allege that it received two invoices from Wide Voice for services rendered ***after*** the Master Addendum was suspended on July 27, 2016. *Id.* ¶¶ 114, 117. Because these invoices are for charges unrelated to the Master Addendum, they cannot support a claim that Wide Voice breached the Master Addendum.

Master Addendum; as such, it fails to "state a claim to relief that is plausible on its face" and thus should be dismissed. *Iqbal*, 556 U.S. at 678 (citations omitted).

The Master Addendum deals with this issue expressly and unambiguously. It puts only one restriction on HD Tandem's charges: HD Tandem must charge Inteliquent "the lowest rates made available to any carrier other than AT&T, Verizon & Google or a third party as part of a legal settlement." Master Addendum, ¶ 2. As long as HD Tandem is charging Inteliquent this lowest rate, HD Tandem cannot be overcharging Inteliquent.

Further, Inteliquent's contract claim confuses its own routing obligations (*see* Master Addendum, ¶ 3) with HD Tandem's rate obligations (*see* Master Addendum, ¶ 2). Under the Master Addendum, Inteliquent must route traffic through HD Tandem if HD Tandem's charges are below the Rate Ceiling,[5] which was less than Inteliquent would pay by sending traffic through the regulated path. *Id.* at 3. Contrary to Inteliquent's pleading, the Rate Ceiling relates **only to** Inteliquent's obligation to route calls to HD Tandem, and has nothing to do with the rate HD Tandem is required to charge. *Id.*

Inteliquent's allegation that HD Tandem has charged more than the Rate Ceiling is not a valid basis for a breach of contract claim under the Master Addendum. SAC ¶ 211. Under the express provisions of the Master Addendum, if HD Tandem's charges are not below the Rate Ceiling, then Inteliquent is free to send the traffic elsewhere. The plain language of the Master

---

[5] As discussed earlier, the Rate Ceiling requires Inteliquent to route traffic through HD Tandem:

> [S]o long as HD Tandem's rates provided to Inteliquent (i) are the lowest rates made available to any carrier (excluding AT&T, Verizon, Google and any third party as part of a legal settlement) and such rates are not greater than the combination of the [A]pplicable LEC's tariffed end office rates and the applicable usage based port recovery credit set out in Section 1 [of the Master Addendum (*i.e.*, the rates charged for the regulated path)] and (ii) are lower than any rate offered to Inteliquent by a third party.

Master Addendum, ¶ 3.

Addendum makes clear that Inteliquent's contract claim is facially implausible.

Additionally, Inteliquent's SAC fails to allege that HD Tandem did not charge Inteliquent "the lowest rates made available to any carrier other than AT&T, Verizon & Google or a third party as part of a legal settlement." Again, this is the only rate obligation imposed on HD Tandem under the terms of the Master Addendum. Absent an allegation that HD Tandem violated this rate provision, Inteliquent cannot possibly state a claim that HD Tandem (or Wide Voice) overcharged Inteliquent.

Moreover, pointing to the Sprint/NAT Decision makes the breach of contract claim no more plausible, as that decision concerned whether certain parties' behavior complied with the stringent regulatory requirements of telecommunications services provided pursuant to a tariff. Tariffs are contracts that carry the weight of law, the provisions of which occupy hundreds of pages. Here, the payment obligations of the parties are governed by a few unambiguous sentences heavily negotiated by sophisticated businesses. The Sprint/NAT decision is nothing more than a red herring. Consequently, Count IV should be dismissed as to Wide Voice.

### C.    Inteliquent Failed To Plead Its RICO Claim (Count I) With Particularity.

In Count I, Inteliquent alleges that Wide Voice and the other defendants violated federal anti-racketeering laws in violation of 18 U.S.C. § 1962(c) (commonly known as "RICO"). The Seventh Circuit has repeatedly cautioned that civil RICO claims serve a limited purpose. *Dremco, Inc. v. Diver*, No. 12 C 8703, 2013 WL 1873917, *3 (N.D. Ill. 2013). RICO "does not cover all instances of wrong-doing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). As the Seventh Circuit lamented in *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992):

> [C]ivil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions. While it is clear that the scope of civil RICO extends beyond the prototypical mobster or organized crime syndicate, it is equally evident that RICO has not federalized every state common-law cause of action available to remedy business deals gone sour.

*See also Carr v. Tillery,* 591 F.3d 909, 918 (7th Cir. 2010) (explaining that breach of contract claims "cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent"); *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) ("[T]he statute was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions."); *Kaye v. D'Amato*, 357 Fed. Appx. 706, 717 (7th Cir. 2009) ("Congress enacted RICO to target long-term criminal activity, not as a means of resolving routine commercial disputes.").

To state a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Inteliquent's RICO claim must be dismissed because it fails to plead sufficient facts to show that any defendant, particularly Wide Voice, engaged in a pattern of racketeering activity.

A pattern of racketeering activity consists, at minimum, of two predicate acts of racketeering committed within a ten-year time period. 18 U.S.C. § 1961(5). "In alleging a RICO pattern, liability is limited to persons who have 'personally committed' at least two predicate acts of racketeering." *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 684 (N.D. Ill. 2012). Predicate acts are violations of a specified list of criminal laws set forth in 18 U.S.C. § 1961(1). Inteliquent asserts wire fraud, mail fraud and money laundering as predicate acts.

Where, as here, a RICO claim is based on alleged wire or mail fraud, the fraud allegations are subject to Rule 9(b) and must be pled with particularity. *Slaney v. Int'l Amateur*

*Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). To satisfy this standard, a plaintiff must allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 729 (7th Cir. 1998). In a case with multiple defendants, "Rule 9(b) requires a RICO plaintiff ***to plead sufficient facts to notify each defendant*** of his alleged participation in the scheme." *Id.* at 726 (emphasis added). Inteliquent fails to comply with any of these requirements as to any of the Defendants.

Inteliquent's SAC is devoid of any particularized allegation that ***any*** defendant made a specific misrepresentation about anything, including that calls to Free Conferencing were being delivered to South Dakota and terminated through the Applicable LECs' "tandem transport services." Instead, the SAC repeatedly refers to the "defendants" together and makes blanket allegations against them without alleging the time, place or content of the alleged fraud, much less the individual role each defendant played. For instance, the SAC vaguely alleges that:

- "HD Tandem and Free Conferencing's leadership made multiple and specific representations to Inteliquent . . . that this traffic really was being delivered to South Dakota and that the charged services truly were being provided" (SAC ¶ 15);

- "[D]efendants . . . falsely represent[ed] to Inteliquent that traffic destined for Free Conferencing is legitimately terminated in South Dakota" (*Id.* ¶ 141);

- "[D]efendants . . . falsely represent[ed] to Inteliquent that [the Applicable LECs] . . . . perform transport services in South Dakota as provided in their respective tariffs" (*Id.*);

- "Inteliquent received repeated and express assurances from the defendants that" their "charges were for legitimate services being delivered to South Dakota through properly chargeable means" (*Id.* ¶ 96); and

- Defendants' "invoice(s) [are] riddled with illegal overcharges" (*Id.* ¶ 29).

These generalized allegations are insufficient to support a RICO claim based on wire or mail fraud. Besides failing to plead the when, where, content, or method by which the alleged

misrepresentations were communicated, the SAC attributes the statements to multiple or all defendants. Rule 9(b), as a matter of law, is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to "defendants." *Goren*, 156 F.3d at 730.

In one paragraph, the SAC does attribute a vague statement to an individual, but even that allegation falls well short of the requirements of Rule 9(b). Inteliquent alleges that:

> Joshua Lowenthal of HD Tandem and Free Conferencing [assured] John Schoder of Inteliquent in (i) the summer of 2015 (before the Master Addendum was executed), and (ii) in April 2016 at the telecommunications industry "Incompass" trade show in Las Vegas . . . that Inteliquent would only be charged for legitimate services actually performed.

SAC ¶ 97. Although ¶ 97 identifies a person, that person is identified as someone associated with "HD Tandem and Free Conferencing," not Wide Voice. It makes no mention of Wide Voice. The allegation also does not allege that the statement is even false, let alone that it was a statement by Wide Voice that was intentionally false when made.

Inteliquent further alleges that:

> In roughly October 2015, Josh Lowenthal and Andrew Nickerson of the defendants complained to Inteliquent . . . that Inteliquent should have delivered traffic to HD Tandem because the rates it offered pursuant to the Master Addendum would have been less than what the [Applicable LECs] would have charged. By raising that complaint, the defendants again represented to Inteliquent that it was necessary and reasonable to charge the rates being charged because of the services the [Applicable LECs] actually were providing.

*Id.* at 106. This allegation is also insufficient to state a claim for fraud. It attributes the representation to one of two people without specifying who made the statement. It also fails to identify when, how, and where the statement was made in "roughly October 2015," as well as the identity of the person at Inteliquent to whom the statement was made. Furthermore, this allegation is vague, conclusory and there is no allegation that even plausibly, let alone with the particularity required by Rule 9(b), explains how the alleged statement is even false.

Inteliquent's RICO claim premised on money laundering also fails. In the context of 18 U.S.C. § 1956, money laundering occurs when "[t]he defendant engaged or attempted to engage in a financial transaction, knowing that the transaction involved proceeds of specified unlawful activity . . . ." *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 773 (N.D. Ill. 2005). The offenses that qualify as "specified unlawful activity" are set forth in 18 U.S.C. § 1956(c)(7) and include essentially all RICO predicate acts. Where wire or mail fraud is not sufficiently pled, they cannot qualify as a "specified unlawful activity" under 18 U.S.C. § 1956. *See, e.g.*, *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *8 (D. Md. Mar. 17, 201) ("Because the Court has already concluded that [plaintiff] failed to adequately plead facts to support the predicate act of wire fraud . . . the predicate act of money laundering necessarily must fail."). Therefore, Inteliquent has failed to plead a "specified unlawful activity" and thus its RICO claim based on money laundering must be dismissed.

In sum, even after given the opportunity to amend its RICO claim, Inteliquent's SAC still makes no allegation of fraud against Wide Voice, nor any particularized allegation of fraud against any other defendant. Its RICO claim in Count I must be dismissed as to Wide Voice.

### D.    Inteliquent's RICO Conspiracy Claim (Count II) Must Be Dismissed.

It is well established "that failure to make out a substantive RICO claim requires dismissal of a [RICO] conspiracy claim based on the same nucleus of operative fact." *Meier v. Musburger*, 558 F. Supp. 2d 883, 911 (N.D. Ill. 2008). Inteliquent's RICO conspiracy claim is based on the same alleged facts as Inteliquent's substantive RICO claim. Because those allegations do not meet the requirements of Rule 9(b), Inteliquent has not stated a claim against Wide Voice for conspiracy under 18 U.S.C. § 1962(d).

**E.** **Inteliquent Failed to Plead Its Fraud/Fraud In The Inducement Claims (Count III) Against Wide Voice And Failed To Plead These Claims With Particularity.**

In Count III, Inteliquent claims that "Free Conferencing and HD Tandem" fraudulently "concealed the network architecture involved in delivering calls to Free Conferencing and have misrepresented the services the '[A]pplicable LECs' actually provide to Inteliquent." SAC ¶ 199. Inteliquent further contends that defendants, "in the bills submitted to Inteliquent under the Master Addendum[,]" have fraudulently charged a rate that includes a "false transport component." *Id.* ¶ 201.

Count III must be dismissed as to Wide Voice because Inteliquent's fraud allegations are explicitly directed against Free Conferencing and HD Tandem. *Id.* ¶ 199. The only allegation of fraud that could possibly be aimed at Wide Voice concerns the bills the "defendants . . . submitted to Inteliquent under the Master Addendum." *Id.* ¶ 201. This basis for fraud fails, however, because the SAC never alleges that Wide Voice billed Inteliquent under the Master Addendum.[6] *See id.* ¶¶ 107-112. Moreover, Inteliquent has alleged no particularized facts to support its claim that defendants' bills fraudulently imposed a "false transport" charge. The bills make no reference to a transport charge, and Inteliquent fails to identify or explain what statement in the bills, or even what part of the bills, is fraudulent.[7] Inteliquent's failure to plead these facts runs afoul of Rule 9(b), and for this reason, Inteliquent's fraud claims against Wide Voice must be dismissed.

The remainder of Inteliquent's fraud claims rest on the same allegations that form the basis of its RICO claim for wire and mail fraud. As with the RICO claim, nowhere in the SAC

---

[6] As noted above, the only invoices Inteliquent alleges it received from Wide Voice were for services unrelated to the Master Addendum. *Id.* ¶¶ 114, 117.
[7] The bills are attached as Exhibit G to the SAC.

15

does Inteliquent allege with any particularity that *any* defendant, particularly Wide Voice, affirmatively represented that calls to Free Conferencing would be terminated in any specific way. In fact, the only pre-Master Addendum representation alleged in Inteliquent's 85-page SAC that is attributed to an actual person is Joshua Lowenthal's "summer of 2015" assurance that "Inteliquent would only be charged for legitimate services actually performed." *Id.* ¶ 97. This alleged representation, as discussed above, lacks particularity and is consistent with the Master Addendum, which imposes no restrictions as to how HD Tandem is to deliver Inteliquent's traffic. As such, it cannot support Inteliquent's claim for fraud in the inducement.

Inteliquent's allegation that "HD Tandem and Free Conferencing have concealed the network architecture involved in delivering calls to Free Conferencing" is also not pled with particularity. The allegation says nothing about who concealed anything, or when or what the circumstances of the alleged concealment were. Further, concealment can serve as a basis for fraud only if a defendant has an affirmative duty to disclose. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996). Inteliquent alleges no facts giving rise to a duty of any defendant to disclose "network architecture." Indeed, such a duty would be wholly inconsistent with the MSA and Master Addendum, both of which give HD Tandem complete discretion as to how it will deliver Inteliquent's traffic.

## F. Inteliquent Has Not Stated A Claim Under California's Unfair Competition Law (Count V).

In Count V, Inteliquent alleges that Wide Voice and the other defendants have violated California's Unfair Competition Law ("UCL") by "deceiv[ing] [Inteliquent] into believing that the '[A]pplicable LECs' legitimately provided . . . transport services" and that "Free Conferencing was a legitimate end user of the" Applicable LECs. SAC ¶¶ 221, 222. The UCL provides a cause of action for business practices that are unlawful, unfair or fraudulent. *In re*

*Anthem, Inc. v. Data Breach Litig.*, --F. Supp. 3d--, 2016 WL 589760, at *17 (N.D. Cal. Feb. 14, 2016). Inteliquent has alleged a violation of the UCL's "unfair" and "fraudulent" prongs. SAC ¶¶ 223, 230.

Rule 9(b)'s particularity requirement applies to each of the three prongs of the UCL where, as here, the claims are based on a "unified course of fraudulent conduct." *Rosado v. eBay Inc.*, 53 F.Supp.3d 1256, 1265 (N.D. Cal. 2014) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-1127 (9th Cir. 2009). The UCL claim should be dismissed for the same reason that the RICO and fraud claims should be dismissed—*i.e.*, Inteliquent has failed to allege particularized facts that Wide Voice or any other defendant committed fraud.[8]

Inteliquent's claim that Wide Voice has violated the "fraudulent" prong of the UCL fails for two additional reasons. First, Inteliquent has not alleged that members of the public are likely to be deceived by Wide Voice's alleged fraudulent business practices. *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 865 (N.D. Cal. 2016). Second, Inteliquent is "not itself a member of the 'public,' and thus it is ineligible to bring [this] claim." *Id.* at 866.

### G.     Inteliquent's ICFA Claim (Count VI) Does Not Comply With Rule 9(b).

Inteliquent's Illinois Consumer Fraud Act ("ICFA") claim suffers from the same pleading deficiencies as its other claims. "A complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud." *Connick*, 675 N.E.2d at 593. Thus, for the same reasons set forth above, Count VI must be dismissed as to Wide Voice.

Furthermore, Inteliquent does not have standing to raise its ICFA claim. Standing under

---

[8] If the Court finds that Inteliquent has plead a violation of the UCL's "unlawful" prong, this claim should be dismissed on the same ground.

the ICFA is limited to consumers and non-consumers who can demonstrate a nexus between their injuries and injuries to the ultimate consumer. *JMR Sales, Inc. v. MMC Electronics Am., Inc.*, No. 02 C 1642, 2002 WL 31269612, at *3 (N.D. Ill. Oct 10, 2002). Non-consumer plaintiffs "must meet the consumer nexus test by alleging that the conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 711 (N.D. Ill. 2006). Inteliquent is not an Illinois "consumer" and does not plead the requisite nexus.

**H.**     **Inteliquent Has Not Stated A Claim For Civil Conspiracy (Count VIII).**

To state a claim for civil conspiracy, a plaintiff must allege "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 602 (Ill. 1998). Plaintiffs must allege not only that one of the conspirators committed an overt act in furtherance of the conspiracy, but also that such act was tortious or unlawful in character. *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994).

As identified in the SAC, the unlawful purpose of the alleged conspiracy among the defendants was a fraudulent scheme to deprive Inteliquent of money. SAC ¶ 1. As already discussed, Inteliquent fails to state a claim for RICO, fraud or violation of a consumer fraud statute. Inteliquent therefore cannot establish that the "fraudulent scheme" was tortious or unlawful. *See Ellis v. Allstate Ins. Co.*, 479 F. Supp. 2d 788, 791 (N.D. Ill. 2006). Consequently, Inteliquent's civil conspiracy claim against Wide Voice must be dismissed.

**I.**     **Inteliquent's Unjust Enrichment (Count VII) Claim Is Based On The Defective Fraud Claim.**

To state a cause of action for unjust enrichment under Illinois law, a plaintiff must allege that the defendant has unjustly retained a benefit to plaintiff's detriment and that the defendant's

retention of the benefit violates fundamental principles of justice, equity and good conscience. *Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011).

Inteliquent bases its unjust enrichment claim on its fraud allegations, namely that defendants' concealed the Applicable LECs' network architecture and misrepresented the services provided to Inteliquent.  SAC ¶ 250.  Where an unjust enrichment claim is based on fraud, the underlying fraud allegations are subject to Rule 9(b)'s heightened standard.  *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949-950 (7th Cir. 2013).  Inteliquent has not pled its fraud allegations with particularity.  In Inteliquent's entire 85-page SAC, no fraud is directly attributed to Wide Voice, let alone sufficiently pled against any of the other defendants.  Therefore, Inteliquent's unjust enrichment claim against Wide Voice must be dismissed.

### J.      Inteliquent Has Not Stated A Claim For Breach Of Contract (Count IX) Against Wide Voice Or Any Other Defendant.

In Count IX, Inteliquent claims that Wide Voice and the other defendants breached the Master Addendum by suspending service.  SAC ¶¶ 267, 268.  Count IX must be dismissed as to Wide Voice because there is no allegation – nor could there be – that Wide Voice either suspended service under the Master Addendum or was obligated to handle Inteliquent's traffic. The Master Addendum, to the extent it amends the MSA, required HD Tandem to "provide[] long distance voice termination services to Inteliquent." *Id.* ¶ 266.  Any claim that Wide Voice suspended service is implausible on its face.[9] *Id.* ¶ 269.

Additionally, even when all allegations in Count IX are assumed to be true, the provisions in MSA relating to "cash deposits" and "credit limits" are unambiguous and the allegations in the SAC make clear that HD Tandem acted within its rights when Inteliquent

---

[9] The only parties to the MSA are Inteliquent and HD Tandem.  *Id.* ¶ 269.

failed to comply with its contractual obligations.

The MSA provides that "[e]ither Party may require a cash deposit or other form of security ***acceptable to the demanding Party*** totaling up to one months anticipated Usage Charges, to ensure the payment of Usage Charges." MSA, ¶ 4.6 (emphasis added). On July 5, 2016, HD Tandem notified Inteliquent that, in accordance with Section 4.6 of the MSA, Inteliquent was required to make a cash deposit of one month's anticipated "Usage Charges." SAC ¶ 276; Ex. O. The amount of the deposit required by HD Tandem was $2,471,500, which was the average of the amounts invoiced to Inteliquent by HD Tandem for May and June 2016. *Id.* HD Tandem's demand for the cash deposit was entirely consistent with its rights under Section 4.6 of the MSA.

HD Tandem further also has the right at any time to set a credit limit on three days' notice. *Id.* ¶ Attach. A, ¶ D.1. After Inteliquent failed to provide the required cash deposit, on July 11, 2016, pursuant to Section D.1 of Attachment A to the MSA, HD Tandem notified Inteliquent that its "Credit Limit going forward shall not exceed $1,500,000." SAC ¶ 282; Ex. Q. On July 20, 2016, HD Tandem demanded that Inteliquent make payment of $4,329,306.61 within three business days in order to reduce its credit limit to $1,500,000. *Id.* ¶ 292; Ex. X. After Inteliquent failed to make this payment, on July 27, 2016, pursuant to its rights under Section D.1 of Attachment A to the MSA, HD Tandem suspended service to Inteliquent. *Id.* ¶ 300. Inteliquent's own allegations, coupled with reading the unambiguous provisions at issue, make clear that Inteliquent has no plausible claim that Wide Voice – or any other defendant – breached the MSA or Master Addendum by suspending service.

## V. <u>CONCLUSION</u>

Based on the points and authorities stated above, Wide Voice, LLC hereby requests the Second Amended Complaint be dismissed with prejudice.

Respectfully submitted,

WIDE VOICE, LLC,


By:    /s/ Lauren J. Coppola
          One of its attorneys

| | |
|---|---|
| Paul J. Kozacky | Stephen Wald |
| Jerome R. Weitzel | Martin P. Desmery |
| Larry J. Lipka | Lauren J. Coppola |
| KOZAKCY WEITZEL MCGRATH, PC. | PARTRIDGE SNOW & HAHN LLP |
| 55 West Monroe, 24th Floor | 30 Federal Street |
| Chicago, IL 60603 | Boston, MA 02110 |
| (312) 696-0900 | (617) 292-7900 |

2881869_1/13075-12

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney, on oath, certifies that on October 27, 2016, she served the foregoing WIDE VOICE, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT via the ECF system to all parties that have consented to same in accordance with applicable Federal Rules of Civil Procedure and Local Rules of the U.S. District Court for the Northern District of Illinois.

/s/ Lauren J. Coppola

Paul J. Kozacky
Jerome R. Weitzel
Larry J. Lipka
KOZACKY WEITZEL MCGRATH, PC.
55 West Monroe, 24th Floor
Chicago, IL  60603
(312) 696-0900

Stephen Wald (*pro hac vice*)
Martin P. Desmery (*pro hac vice*)
Lauren J. Coppola (*pro hac vice*)
PARTRIDGE SNOW & HAHN LLP
30 Federal Street
Boston, MA  02110
(617) 292-7900